# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

SAMUEL W. ASBURY,

      Plaintiff,

v.                             Case No: 8:25-cv-141-KKM-AEP

KEVIN P. STOUT, et al.,

      Defendants.

_____

## ORDER

Samuel Asbury alleges that six defendants intentionally harmed his law practice and seeks recompense and an order protecting from future harm. Second Am. Compl. (Doc. 6). The defendants argue that this Court lacks personal jurisdiction over Asbury's claims and that the Middle District of Florida is an improper venue. MTD I (Doc. 14); MTD II (Doc. 17); MTD III (Doc. 18). For the reasons below, I agree with the defendants. But because the interests of justice appear to favor transfer over dismissal, the parties are directed to explain why I ought not transfer this action to the District of Oregon.

## I.    BACKGROUND

Asbury is a lawyer with his principal office in Tampa, Florida. Second Am. Compl. ¶ 2; Asbury Decl. (Doc. 33-1) ¶¶ 1, 5. Defendants Michael and Kevin Stout—the two members of Stout LLC—reside in Oregon and are licensed to practice law there. Second Am. Compl. ¶ 2. Defendant Krystal Loverin—the sole member of Defendant Immigration Assistants, LLC (IA)—owns a residence in Oregon. *Id.* And Defendant Mackenize Watkins resides in Texas. *Id.*

In December 2022, Asbury agreed to help attorney Dan Larsson transition to retirement. *Id.* ¶ 9. Asbury inherited Larsson's "book of business" in Oregon and started to represent Larsson's clients. *See, e.g.*, *id.* ¶¶ 9, 21, 42; *see* Asbury Decl. ¶ 11 (stating that "most" of Larsson's former clients are in Oregon, with some residing in other jurisdictions). As Asbury inherited client relationships and worked to form new ones, Defendants Loverin, IA, and Watkins, all of whom had professional relations with Larsson,[1] sought to convince Asbury's current and potential clients to retain Stout Law LLC. Second Am. Compl. ¶ 21. Despite their

---

[1] Loverin served as a paralegal for Larsson. Asbury had previously informed her that, after her work on Larsson's cases concluded, Asbury no longer needed her services. Second Am. Compl. ¶¶ 31–32. Until her termination, Watkins had served as Larsson's office manager and paralegal. *Id.* ¶ 21 n.4.

knowledge that these were current or potential clients of Asbury, the Stouts communicated with the clients for the alleged purpose of "pursuing frivolous money and ethics claims" against Larsson and Asbury. *Id.*

Along with courting Asbury's current and potential clients, Asbury claims that the Stouts defamed him. In November 2023, Asbury fired one client, Lily Tisiot, because she failed to provide requested information and documents. *Id.* ¶ 9. At the time, Tisiot was living in Canada and her husband was living in Oregon. *Id.* ¶ 10. Two days later, Tisiot retained Stout Law. *Id.* In seeking immigration relief for Tisiot, Kevin Stout contacted the staff of Jeff Merkley, a United States Senator from Oregon. *Id.* ¶¶ 11–15; *see* Ex. 2 (Doc. 1-1 at 8–23). In a series of emails with Merkley's Oregon staff, Stout criticized Asbury and Larsson's representation of Tisiot. *See generally* Ex. 2. Stout wrote that Asbury and Larsson "did nothing" for Tisiot and "failed to work on her immigrant visa case for years." Second Am. Compl. ¶¶ 12, 14. Stout also opined that Tisiot and her husband "were victims of either fraud or gross incompetence" by Asbury and Larsson. *Id.* ¶ 14. The Stouts later put these "defamatory statements into public record in Oregon by filing an ethics complaint against" Asbury and Larsson. *Id.* ¶ 15.

3

The Stouts, according to Asbury, "have engaged in vexatious litigation against [Asbury] by filing multiple civil proceedings against [Asbury] for the purpose of harassment and other wrongful ulterior purposes." *Id.* ¶ 26. These proceedings include ethics complaints, money demands to the Oregon Professional Liability Fund and the Oregon Client Security Fund, and a civil case in Oregon. *Id.* ¶¶ 5, 26. With respect to the civil case, the Stouts served process on Asbury in Florida. *Id.* ¶ 5.

As a result of these alleged events, Asbury initiated this action. He brings a defamation claim against the Stouts and Stout LLC[2] (Count I), an intentional interference claim against all defendants (Count II), an abuse of process claim against the Stouts (Count III), and a claim arising under Oregon's Unlawful Trade Practices Act against Loverin and IA (Count IV). *Id.* ¶¶ 9–34. Asbury also brings a "declaratory judgment" claim against the Stouts and a "permanent injunction" claim against all defendants. *Id.* ¶¶ 35–43. The defendants move to dismiss for a lack of personal jurisdiction and improper venue. MTD I; MTD II; MTD III.

---

[2] For the rest of the order, I refer to these defendants collectively as the "Stouts."

## II.   LEGAL STANDARDS

### A. Rule 12(b)(2)

A party may move under Federal Rule of Civil Procedure 12(b)(2) to dismiss for lack of personal jurisdiction. To have personal jurisdiction over a party, a federal court sitting in diversity must determine if the state's long-arm statute is satisfied and ensure that the exercise of jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018).

A plaintiff has the burden of "establishing a prima facie case of personal jurisdiction." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). Taking the allegations in the complaint as true, a court must ask whether "the plaintiff presents sufficient evidence to defeat a motion for a directed verdict." *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). When the defendant submits an affidavit that sufficiently refutes the complaint's personal jurisdiction allegations, "the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction." *Stubbs*, 447 F.3d at 1360.

### B. Rule 12(b)(3)

Under federal statute, a civil action may be brought in one of three places:

     (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

     (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

     (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). A defendant may move to dismiss for "improper venue." FED. R. CIV. P. 12(b)(3). "On a motion to dismiss based on improper venue, the plaintiff has the burden of showing that venue in the forum is proper." *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004); *see Home Ins. Co. v. Thomas Indus., Inc.*, 896 F.2d 1352, 1355 (11th Cir. 1990). "The court must accept all allegations of the complaint as true, unless contradicted by the defendants' affidavits, and when an allegation is so challenged the court may examine facts outside of the complaint to determine whether venue is proper." *Wai*, 315 F. Supp. 2d at 1268.

## III.  ANALYSIS

     The defendants move to dismiss for a lack of personal jurisdiction and improper venue. I agree that personal jurisdiction is lacking and venue is improper.

## A. Personal Jurisdiction is Lacking

Asbury argues that "specific personal jurisdiction" exists over each of his claims. Resp. (Doc. 19) at 5 n.3 (emphasis omitted). Although there exists considerable overlap, I separately address each claim.

### 1. Personal Jurisdiction is Lacking over Asbury's Defamation Claim against the Stouts

Asbury alleges that the Stouts defamed him in a series of emails to Senator Merkley's office and in an ethics complaint filed with the Oregon Bar. Second Am. Compl. ¶¶ 11–15, 18.[3] The Stouts argue that Asbury fails to allege facts supporting specific jurisdiction under Florida's long-arm statute and the Due Process Clause. MTD I at 6–9, 15–18.

---

[3] In his response to the motions to dismiss, Asbury represents that he is not alleging that the Stouts are liable for the "many acts of defamation in the ethics complaints the Stouts have filed against Plaintiff." Resp. at 5–6. Asbury nonetheless argues that Floridians can access these complaints, and thus "those defamatory ethics complaints subject the Stouts to personal jurisdiction in Florida." *Id.* at 6. Because Asbury pleaded a defamation claim based on one of the ethics complaints, I will address it for completeness. But I note that alleged contacts with a forum that are unrelated to a plaintiff's claim will not justify the exercise of specific jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (explaining that specific jurisdiction "depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation" (alteration in the original) (quotation omitted)).

Asbury relies on § 48.193(1)(a)(2), Florida Statutes, which provides for specific jurisdiction over "any cause of action arising from" a person "[c]ommitting a tortious act within [Florida]." A defendant's physical presence in Florida is not necessary for this provision to apply. *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002); *accord Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1273–74 (11th Cir. 2022). Instead, a defendant can commit a tortious act in Florida by sending an electronic communication into the State. *Wendt*, 822 So. 2d at 1260. The Florida Supreme Court has held that "allegedly defamatory material about a Florida resident placed on the Web and accessible in Florida constitutes an 'electronic communication into Florida' when the material is accessed" in Florida by a third party. *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1214 (Fla. 2010); *see id.* at 1215 ("When the posting is then accessed by a third party in Florida, the material has been 'published' in Florida and the poster has communicated the material 'into' Florida, thereby committing the tortious act of defamation within Florida."). Beyond this, the Eleventh Circuit has concluded that § 48.193(1)(a)(2) "permits jurisdiction over the nonresident defendant who commits a tort outside of the state that causes injury inside the state." *Licciardello v. Lovelady*, 544 F.3d 1280, 1283

(11th Cir. 2008). The Florida Supreme Court has reserved ruling on the validity of this reading of the long-arm statute. *Marshall*, 39 So. 3d at 1206 n.6.

Asbury fails to allege facts that the Stouts published defamatory material in Florida. The emails between Kevin Stout and Senator Merkley's office appear to constitute communications into Oregon. *See Marshall*, 39 So. 3d at 1208 (explaining that "determination of whether certain acts constitute communications into Florida is straightforward when" it comes to "electronic communications in the form of e-mails" because "those communications are directed to reach a specific recipient in a specific forum"). The same is true about the ethics complaint to the Oregon Bar. Asbury alleges that the complaint is available to the public, Second Am. Compl. ¶ 18, but he does not provide support for the proposition that availability to the public transforms a complaint filed in Oregon into a "communication into Florida." This conclusion remains even if this complaint was "available on the Internet." Asbury Decl. ¶ 25. Asbury does not allege that the Stouts posted the complaint on the Internet. *Cf. Marshall*, 39 So. 3d at 1215 ("By posting allegedly defamatory material on the Web about a Florida resident, the *poster* has directed the communication about a Florida resident to readers worldwide, including potential readers within Florida." (emphasis added)).

9

Also, Asbury fails to allege that a third-party accessed these communications in Florida. *See Marshall*, 39 So. 3d at 1215 (requiring "third-party" access); *Stone v. Shafran*, 641 F. Supp. 3d 1344, 1363 (S.D. Fla. 2022) ("[P]ublication of the defamatory statement must be to a *third party* in Florida."). That Asbury accessed the emails in Florida when his attorney emailed them to him is therefore of no consequence.

Even assuming the alleged harm to Asbury—a Florida resident—can provide a basis for application of § 48.193(1)(a)(2), *see Licciardello*, 544 F.3d at 1283, the exercise of personal jurisdiction would run afoul of the Due Process Clause. The due-process test is comprised of three parts: "(1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013). "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, 'a defendant must make a "compelling case" that the exercise of jurisdiction would violate

traditional notions of fair play and substantial justice.'" *Id.* (quoting *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1267 (11th Cir. 2010)).

Asbury's claim fails to satisfy the first inquiry. Asbury alleges that specific jurisdiction exists because the Stouts allegedly defamed a Florida resident. *See* Second Am. Compl. ¶¶ 6–7; Resp. at 8. But Asbury fails to allege that his defamation claim "arises out of or relates to" any contact that the Stouts have had with Florida. The relevant acts for the purposes of the defamation claim—the emails and filing of the ethics complaint—took place in Oregon, not Florida. *See supra* at 9. Missing is any allegation that the Stouts themselves directed into Florida any communication concerning Asbury. *Cf. Licciardello*, 544 F.3d at 1287–88 (finding sufficient contacts between an out-of-state defendant and Florida when the defendant intentionally used a Florida plaintiff's "trademarked name and . . . picture on a website accessible in Florida in a manner to imply [the plaintiff's] endorsement of [the defendant] and his products"). The fact that Asbury—the subject of the out-of-forum speech—resides in Florida is not sufficient on its own to satisfy the Due Process Clause. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("[T]he plaintiff cannot be the only link between the defendant and the forum."); *accord ECB USA,*

11

*Inc. v. Savencia Cheese USA, LLC*, No. 23-12580, ---F.4th ----, 2025 WL 1872779, at *5 (11th Cir. July 8, 2025) ("Personal jurisdiction cannot be predicated . . . on the 'unilateral activity' of a plaintiff." (quoting *Walden*, 571 U.S. at 286)). Because the "essential foundation" of specific jurisdiction—the strong "relationship among the defendant, the forum, and the litigation"—is missing, Asbury fails to allege a prima facie case of personal jurisdiction. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 365 (2021) (quoting *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

Asbury focuses most of his attention on the second inquiry of the due-process test, but, even if he gets there, his complaint is still insufficient. To determine whether a defendant in an intentional tort case has purposefully availed himself of the benefit of the forum state's laws, there are two applicable tests: "the effects test and the traditional minimum-contacts test." *SkyHop Techs., Inc. v. Narra*, 58 F.4th 1211, 1230 (11th Cir. 2023).

Asbury relies most on the effects test, which the Supreme Court endorsed in *Calder v. Jones*, 465 U.S. 783 (1984). *Calder* concerned a libel claim arising from the publication of a magazine article in California. 465 U.S. at 785–76. Two defendants, the writer and editor of the article, resided in Florida and argued that

the California state court lacked personal jurisdiction to hear the libel claim against them. *Id.* The Supreme Court rejected this argument because (1) the "allegedly libelous story concerned the California activities of a California resident"; (2) the article "impugned the professionalism of an entertainer whose television career was centered in California"; (3) the "article was drawn from California sources"; and (4) "and the brunt of the harm, in terms both of [the plaintiff's] emotional distress and the injury to her professional reputation, was suffered in California." *Id.* at 788–89. *Calder*'s effects test thus "requires a showing that the defendant (1) committed an intentional tort (2) that was directly aimed at the forum, (3) causing an injury within the forum that the defendant should have reasonably anticipated." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 n.28 (11th Cir. 2009).

Asbury argues that the effects test is satisfied here. Second Am. Compl. ¶¶ 6–7; Resp. at 8–9 ("Since [Asbury's] business is based in Tampa, it is plausible to assume that Defendants anticipated harm would be suffered in Tampa."). But "[p]ost-*Calder*, the Supreme Court clarified that a defendant's actions do not create sufficient contacts with the forum state 'simply because he allegedly directed his conduct at a plaintiff whom he knew had connections' with the forum state." *Moore v. Cecil*, 109 F.4th 1352, 1363 (11th Cir. 2024) (per curiam) (alterations and

omissions adopted) (quoting *Walden*, 571 U.S. at 289). In other words, even though the communications referenced Asbury, and he suffered harm in Florida, that is not enough to satisfy the Due Process Clause. *See id.* Asbury must also demonstrate that "that [the Stouts] undertook intentional actions that were expressly aimed at [Florida]." *Id.* at 1364 (emphasis omitted) (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1077 (10th Cir. 2008) (Gorsuch, J.)). Because the alleged communications were all aimed at various parties in Oregon, and the Stouts did not direct any communications to Florida, *Calder*'s personal effects test is not satisfied. *See id.* ("[W]here there is no evidence that the defendant posted the allegedly defamatory information hoping to reach the forum state or an audience in the forum state specifically, then the *Calder* effects test is not satisfied.").

Asbury's arguments under the minimum contacts test are unavailing for similar reasons. "The minimum contacts test assesses the nonresident defendant's contacts with the forum state and asks whether those contacts (1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Del Valle*, 56 F.4th at 1276. With respect to the defamation claim, the Stouts' only

alleged contact with Florida is Asbury. This is insufficient. *See Walden*, 571 U.S. at 285 ("[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."). There are no allegations that the Stouts, by their "own choice," "deliberately 'reached out beyond' [their] home" and "purposefully avail[ed] [themselves] of the privilege of conducting activities within the forum State." *Ford Motor Co.*, 592 U.S. at 359 (first quoting *Walden*, 571 U.S. at 285; then quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); *cf. Louis Vuitton*, 736 F.3d at 1358 (concluding that "purposeful availment for due process was shown" "because, in addition to [the defendant's] fully interactive . . . website accessible in Florida, [the defendant] had other contacts with Florida— through selling and distributing infringing goods through his website to Florida consumers").

For these reasons, Asbury fails to allege a prima facie case of personal jurisdiction concerning the defamation claim.[4]

---

[4] As a result of this conclusion, I do not consider the Stouts' other arguments regarding personal jurisdiction over the defamation claim.

### 2. Personal Jurisdiction is Lacking over Asbury's Tortious Interference Claim against all Defendants

Asbury alleges that the defendants tortiously interfered with contracts and business relationships when they "colluded and collaborated to secretly communicate with and interfere with [his] clients and potential clients." Second Am. Compl. ¶ 20. The defendants argue that Asbury fails to state a prima facie case for personal jurisdiction under Florida's long-arm statute because he fails to allege that they "engaged in any communications or other conduct in Florida in connection" with the claim. MTD I at 10; MTD II at 6; MTD III at 8. The defendants also argue that the exercise of personal jurisdiction over this claim would violate the Due Process Clause. MTD I at 15–18; MTD II at 8–11; MTD III at 11–14.

Asbury fails to allege any communications or conduct in Florida regarding this claim. Instead, it appears that the defendants' alleged acts of interference concerned the "book of business" in Oregon that Asbury inherited from Larsson. Second Am. Compl. ¶ 42; *see* Asbury Decl. ¶ 11 (explaining that "most" of Larsson's former clients are in Oregon, with some residing in other jurisdictions). Out of the examples that Asbury pleads, *see, e.g., id.* ¶ 23, none are alleged to have any connection to a tortious act in Florida. And although Asbury includes a conclusory allegation that Loverin, IA, and Watkins "knew [Asbury] lives and works in Florida when they

posted communications through the Internet that were accessible in Florida and aimed at [Asbury] in Florida," Asbury fails to identify the content of these alleged communications or connect them to his tortious interference claim. Second Am. Compl. ¶ 4.

Faced with similar allegations, both state and federal courts have concluded that Florida's long-arm statute does not authorize an exercise of specific jurisdiction because the acts giving rise to the claim occurred outside the State. *See, e.g.*, *Helix Elec., Inc. v. Power Design, Inc.*, 295 So. 3d 358, 360–61 (Fla. 2d DCA 2020); *Metnick & Levy, P.A. v. Seuling*, 123 So. 3d 639, 645–46 (Fla. 4th DCA 2013); *Hvide v. Holt Fin. Ltd.*, No. 20-22266-CIV, 2021 WL 8154846, at *12–13 (S.D. Fla. Sept. 13, 2021). But as explained above, the Eleventh Circuit has long employed a broader reading of Florida's long arm statute, one which "permits jurisdiction over the nonresident defendant who commits a tort outside of the state that causes injury inside the state." *Licciardello*, 544 F.3d at 1283; *see, e.g.*, *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1216–17 (11th Cir. 1999) (per curiam) (applying this reading to a tortious interference claim). And at least one of my colleagues has applied this precedent in a similar context to conclude that the long-arm statute authorized the exercise of specific jurisdiction. *See RG Golf Warehouse, Inc. v. Golf Warehouse,*

*Inc.*, 362 F. Supp. 3d 1226, 1238 (M.D. Fla. 2019) ("Under *Posner* and *Licciardello*, the Court finds Section (1)(a)(2) satisfied because the alleged financial harm resulting from Defendant's interference with the [at-issue] contract occurred in Florida.").

Here, Asbury, a Florida resident, alleges that he suffered financial harm as a result of the defendants' alleged acts of tortious interference. *See* Second Am. Compl. ¶¶ 2, 20, 46. Therefore, it appears that Florida's long-arm statute, as interpreted by the Eleventh Circuit, might authorize specific personal jurisdiction over this claim.

But like the defamation claim, the exercise of specific jurisdiction would not comport with the Due Process Clause. This is because Asbury's tortious interference claim does not "arise out of or relate to" any of the defendants' contacts with Florida. *Del Valle*, 56 F.4th at 1275. As before explained, Asbury does not allege that any of the alleged acts of interference took place in Florida. *See supra* at 16–17. And although "proof that the plaintiff's claim came about because of the defendant's in-state conduct" is not always necessary, there still must be an allegation of some " 'activity [or] occurrence' involving the defendant that takes place in the State." *Ford Motor Co.*, 592 U.S. at 362 (alteration in the original) (quoting *Bristol-Myers*

*Squibb Co. v. Super. Ct. of Cal., S. F. Cnty.*, 582 U.S. 255, 262 (2017)); *see*

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)

("Specific jurisdiction . . . depends on an affiliatio[n] between the forum and the

underlying controversy, principally, activity or an occurrence that takes place in the

forum State and is therefore subject to the State's regulation." (alteration in the

original) (quotation omitted)); *ECB USA, Inc.*, 2025 WL 1872779, at *5 ("We are

concerned with the sellers' 'intentional conduct' to 'create[] the necessary contacts

with the forum.' " (alteration in the original) (quoting *Walden*, 571 U.S. at 286)).

The defendants' knowledge that the plaintiff resides in a certain jurisdiction—here,

Asbury in Florida—is insufficient. *See Walden*, 571 U.S. at 289 ("Petitioner's

actions in Georgia did not create sufficient contacts with Nevada simply because he

allegedly directed his conduct at plaintiffs whom he knew had Nevada

connections.").

Accordingly, even if authorized by Florida's long-arm statute, exercise of

personal jurisdiction over this claim would violate the Due Process Clause.

### 3. Personal Jurisdiction is Lacking over Asbury's Abuse of Process Claim

Asbury alleges that the Stouts "have engaged in vexatious litigation against

[Asbury] by filing multiple civil proceedings against [Asbury] for the purpose of

19

harassment and other wrongful ulterior purposes." Second Am. Compl. ¶ 26. The Stouts argue that neither Florida's long-arm statute nor the Due Process Clause authorizes exercise of specific jurisdiction over this claim. MTD I at 11–13, 15–18.

Specific jurisdiction is lacking over this claim for the same reasons it is lacking over the others. Asbury does not allege that any of the civil proceedings that form the basis of Asbury's claim—the civil suit and various bar-related proceedings—have any connection to Florida other than the fact that Asbury is a party. *See* Second Am. Compl. ¶ 26. Even if Asbury's alleged injuries authorize exercise of specific jurisdiction under Florida's long-arm statute, *see Licciardello*, 544 F.3d at 1283, the Due Process Clause does not permit it in the light of the lack of any connection between the defendants, Florida, and Asbury's abuse of process claim, *see Walden*, 571 U.S. at 284–86.

This conclusion holds even though Asbury was served process in Florida related to the Oregon civil proceeding. For one, Asbury's abuse of process claim is not predicated on this single alleged contact. In Oregon, abuse of process "is the perversion of legal procedure to accomplish an ulterior purpose when the procedure is commenced in proper form and with probable cause." *Kelly v. McBarron*, 482

P.2d 187, 190 (Or. 1971).[5] "[T]o prevail on an abuse of process claim, a plaintiff must prove some ulterior purpose, unrelated to the process, and a willful act in the use of the process that is not proper in the regular conduct of the proceeding." *Singh v. McLaughlin*, 297 P.3d 514, 524 (Or. Ct. App. 2013).

Based on these cases, the Stouts' alleged contact in Florida bears only the slightest relevance to Asbury's claim. *See Larsen v. Credit Bureau, Inc. of Ga.*, 568 P.2d 657, 658 (Or. 1977) ("[T]here is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." (quotation omitted)). Put differently, "an affiliatio[n] [is lacking] between [Florida] and the underlying controversy." *Goodyear*, 564 U.S. at 919 (first alteration in the original) (quotation omitted). I find persuasive out-of-circuit caselaw that has concluded the same when faced with similar arguments. *See, e.g.*, *Allred v. Moore & Peterson*, 117 F.3d 278, 287 (5th Cir. 1997) ("[W]e hold that where process is issued in a Louisiana lawsuit and is properly served in Mississippi on a Mississippi resident . . . , such service—absent any other Mississippi

---

[5] Asbury relies on Oregon law in his complaint. Second Am. Compl. ¶ 25. Even if Florida law applies, this analysis would remain the same. *See* MTD I at 11; *In re Fundamental Long Term Care, Inc.*, 873 F.3d 1325, 1346 (11th Cir. 2017); *Bothmann v. Harrington*, 458 So. 2d 1163, 1169 & n.8 (Fla. 3d DCA 1984).

nexus—provides insufficient contact with Mississippi to support the exercise of personal jurisdiction by a Mississippi court over non-residents."); *Wallace v. Herron*, 778 F.2d 391, 394 (7th Cir. 1985) (concluding that the Due Process Clause did not allow for the exercise of personal jurisdiction in Indiana when, through a California suit, "the defendants served interrogatories, requested the production of documents, and caused the plaintiff to respond to five complaints in Indiana where the plaintiff resides").

Accordingly, personal jurisdiction is lacking over Asbury's abuse of process claim.[6]

### 4. Personal Jurisdiction is Lacking over Asbury's Unlawful Trade Practices Act Claim

Asbury alleges that Loverin and IA "have and continue to use unlawful trade practices in connection with legal services directly related to [Asbury] and [Asbury's] clients and potential clients." Second Am. Compl. ¶ 29. As examples of this conduct, Asbury alleges that Loverin and IA have engaged in unlawful communications with Asbury's clients. *See id.* ¶¶ 32–34. Loverin and IA argue that

---

[6] As a result of this conclusion, I do not consider the Stouts' other arguments regarding personal jurisdiction over the abuse of process claim.

neither Florida's long-arm statute nor the Due Process Clause authorizes exercise of specific jurisdiction over this claim. MTD III at 5–14.

Personal jurisdiction is lacking over this claim. Asbury's arguments to the contrary are unpersuasive for the reasons above. None of the conduct relevant to this claim is alleged to have any connection to Florida other than the fact that Asbury lives here. Like with the tortious interference claim, Asbury fails to link to this claim to any electronic communications posted on the "Internet that were accessible in Florida and aimed at [Asbury] in Florida." Second Am. Compl. ¶ 4. And even if an in-state injury satisfies § 48.193(1)(a)(2), the lack of relation between Loverin and IA, Asbury's claim, and Florida means that the Due Process Clause prohibits exercise of specific jurisdiction. *See supra* at 17–19.[7]

### 5. Personal Jurisdiction is Lacking over Asbury's Claim for Declaratory Relief and Injunctive Relief is Unavailable

Asbury seeks a declaratory judgment stating "that the Stouts made defamatory statements about [Asbury] and intentionally misrepresented the facts of their client's case to U.S. Senator Jeff Merkley." Second Am. Compl. ¶ 36. Personal jurisdiction is lacking over this claim for the same reasons it is lacking over the underlying

---

[7] Loverin and IA indicate a desire to seek attorney's fees. MTD III at 3 n.1. This claim is not yet ripe.

defamation claim. *See supra* at 7–15; *Shaunnessey v. Monteris Med., Inc.*, 554 F. Supp. 2d 1321, 1325 (M.D. Fla. 2008) (considering whether personal jurisdiction existed over a declaratory judgment claim under Florida's long-arm statute and the Due Process Clause).

Asbury also seeks permanent injunctive relief preventing the defendants "from communicating with former clients [of] Dan Larsson and from filing any bar complaints, malpractice insurance claims, Oregon Client Security Fund claims, or lawsuits against [Asbury]." Second Am. Compl. ¶¶ 43, 50.[8] Because there is an absence of personal jurisdiction, I lack the power to issue the requested relief. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (explaining that a court without personal jurisdiction is "powerless to proceed to an adjudication" (quoting *Emps. Reinsurance Corp. v. Bryant*, 299 U.S. 374, 382 (1937))).

### B. Venue is Improper

Asbury alleges that venue is proper in the Middle District because the defendants knowingly targeted a Florida resident. Second Am. Compl. ¶ 7. The

---

[8] Although styled as a claim for relief, "[i]njunctive relief is a remedy, not an independent claim for relief." *Petro Gate, Inc. v. Circle K Stores, Inc.*, No. 8:20-CV-961-CEH-CPT, 2021 WL 3025757, at *1 (M.D. Fla. Feb. 19, 2021); *see Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311 (1982) ("It goes without saying that an injunction is an equitable remedy.").

defendants argue that venue is improper because none of § 1391(b)'s bases are present—none of the defendants reside in Florida and none of the relevant events occurred in this District. MTD I at 19–20; MTD II at 11–13; MTD III at 14–16.

Based on Asbury's allegations, venue is improper in the Middle District of Florida. First, Asbury alleges that all of the defendants reside in jurisdictions other than the Middle District of Florida. Second Am. Compl. ¶ 2; *see* 28 U.S.C. § 1391(b)(1) (providing that venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located"). Second, all "the events that directly give rise to [Asbury's] claims," took place outside of Florida. *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003); *see* 28 U.S.C. § 1391(b)(2) (providing that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred"). In other words, Florida is not one of those "those locations [that has] host[ed] a 'substantial part' of the events" relevant to Asbury's claims. *Jenkins Brick Co.*, 321 F.3d at 1371. As explained, contrary to Asbury's argument, none of the alleged defamatory statements "were published" in this District, which renders inapposite the non-precedential authorities on which Asbury relies to argue that the Middle District is the proper venue. Resp. at 15 & n.22; *see supra* at 9. Finally, it

appears that Asbury's claims may be brought at least in one other district—the District of Oregon—and personal jurisdiction is lacking in this District, which means that § 1391(b)'s third basis for venue is unavailable to Asbury. *See* § 1391(b)(3) (providing for venue in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action" "if there is no district in which an action may otherwise be brought as provided in this section"); Resp. at 14 (recognizing that the action could have been brought in the District of Oregon). Accordingly, venue is improper in the Middle District of Florida.

### C. Disposition

If venue is improper, "the case must be dismissed or transferred under [28 U.S.C. § 1406]." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 56 (2013); *see* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."). Section 1406(a) is not "limited to

actions in which the transferring court has personal jurisdiction over the defendants."
*Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465 (1962).[9]

The defendants request dismissal, MTD I at 20; MTD II at 13; MTD III at 16, whereas Asbury requests transfer to the District of Oregon, Resp. at 17. "The decision whether to transfer a case is left to the sound discretion of the district court," *Roofing Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 985 (11th Cir. 1982), and "the interests of justice generally favor transferring a case to the appropriate judicial district rather than dismissing it," *Hemispherx Biopharma, Inc. v. MidSouth Capital, Inc.*, 669 F. Supp. 2d 1353, 1359 (S.D. Fla. 2009). Before transferring, a court must ensure that the plaintiff's claims "could have been brought" in the transferee court, 28 U.S.C. § 1406, with respect to both venue and personal jurisdiction, *see Hemispherx Biopharma, Inc.*, 669 F. Supp. 2d at 1359. Courts also consider whether "a case was brought in an improper venue in bad faith or in an

---

[9] Transfer also may be available under 28 U.S.C. § 1631, which allows for transfer when "there is a want of jurisdiction" and "if in the interest of justice." *See Franco v. Mabe Trucking Co., Inc.*, 3 F.4th 788, 795 (5th Cir. 2021) (joining "the weight of circuit authority and conclud[ing] that the use of the term 'jurisdiction' in § 1631 encompasses both subject-matter and personal jurisdiction"); *see also Okongwu v. Reno*, 229 F.3d 1327, 1331 n.3 (11th Cir. 2000); *Slatick v. Dir., Off. of Workers' Comp. Programs, U.S. Dep't of Lab.*, 698 F.2d 433, 434 (11th Cir. 1983) (per curiam).

effort to harass a defendant." *Palmer v. Dau*, No. 6:10cv248, 2010 WL 2740075, at *2 (M.D. Fla. Jul. 12, 2010); *see also Cruz-Aguilera v. I.N.S.*, 245 F.3d 1070, 1074 (9th Cir. 2001) (per curiam) ("When determining whether transfer is in the interest of justice, courts have considered whether the failure to transfer would prejudice the litigant, whether the litigant filed the original action in good faith, and other equitable factors.").

Given that the conduct relevant to this litigation all appears to have occurred in Oregon, the District of Oregon would presumably have personal jurisdiction over all the defendants. *See Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (per curiam) ("Oregon's long-arm statute confers jurisdiction to the extent permitted by due process."). For the same reason, it appears that venue would be proper in the District of Oregon. *See* 28 U.S.C. § 1391(b)(2). Further, although Asbury's personal jurisdiction and venue arguments lack merit, there is insufficient evidence in the record to conclude that Asbury has acted in bad faith or to harass the defendants. Therefore, transfer appears to be the appropriate resolution. *See* 14D CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3827 (4th ed. May 2025 update) ("In most cases of improper venue, the courts conclude that it is in the interest of justice to transfer to a proper forum rather than to dismiss

the litigation."). The parties are directed to address transfer to the District of Oregon. *See Nalls v. Coleman Low Fed. Inst.*, 440 F. App'x 704, 706 (11th Cir. 2011) (per curiam).

## IV.   CONCLUSION

Accordingly, the following is **ORDERED:**

1.   The Court **RESERVES** ruling on the Motions to Dismiss (Docs. 14, 17, and 18).

2.   No later than **July 24, 2025**, the parties are directed to explain why this action should not be transferred to the District of Oregon.

**ORDERED** in Tampa, Florida, on July 10, 2025.

Kathryn Kimball Mizelle
United States District Judge