IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SAMUEL W. ASBURY,

Plaintiff,

v.

KEVIN P. STOUT; MICHAEL J. STOUT; STOUT LAW, LLC; KRYSTAL LOVERIN; IMMIGRATION ASSISTANTS, LLC; and MACKENZIE WATKINS,

Defendants.

Case No.: 3:25-cv-01386-AN

OPINION AND ORDER

Plaintiff Samuel Asbury, an Oregon-licensed attorney representing himself,[1] brings this action against defendants Kevin Stout, Michael Stout, and their law firm, Stout Law, LLC (together the "Stout defendants"); Krystal Loverin and her business, Immigration Assistants, LLC (together the "Loverin defendants"); and Mackenzie Watkins. Plaintiff alleges defamation, interference with business relationships, wrongful use of civil proceedings, and violations of Oregon's Unfair Trade Practices Act. The Stout defendants moves to strike plaintiff's claims against them under Oregon's Anti-Strategic Lawsuits Against Public Participation ("anti-SLAAP") law and all defendants move to dismiss. After reviewing the parties' papers, the Court finds this matter appropriate for decision without oral argument. *See* Local R. 7-1(d). For the reasons stated below, the Stout defendants' motion to strike is GRANTED. Further, the motions to dismiss by Watkins and the Loverin defendants are GRANTED.

[1] Plaintiff's complaint emphasizes that he is self-represented. *See* 2d Am. Compl., ECF 6, at 1 n.1. Although federal courts usually construe pleadings by self-represented litigants liberally, no such consideration is extended to attorneys representing themselves. *See Huffman v. Lindgren*, 81 F.4th 1016, 1020-21 (9th Cir. 2023). Indeed, as a practicing attorney, plaintiff is expected to be proficient at drafting pleadings and will be held to the same standard as any other attorney appearing before this Court.

## LEGAL STANDARDS

### A. Special Motion to Strike

Oregon's anti-SLAPP statute is "designed to allow the early dismissal of meritless lawsuits aimed at chilling expression through costly, time-consuming litigation." *Gardner v. Martino*, 563 F.3d 981, 986 (9th Cir. 2009); *see also generally* Oregon Revised Statute ("ORS") § 31.150. Although anti-SLAPP laws may contain procedures that must yield to conflicting federal rules, the Ninth Circuit has held that, at minimum, the special motion procedure and the availability of fees and costs "may properly be invoked in federal court." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 845 (9th Cir. 2001). The special motion to strike is available to quash claims based on covered public participation activities, *see* Or. Rev. Stat. § 31.150(2), but it may not be used to challenge claims against a defendant "primarily engaged in the business of selling or leasing goods or services if the claim arises out of a communication related to the person's sale or lease of the goods or services." Or. Rev. Stat. § 31.150(3).

Courts evaluate special motions to strike under Oregon's anti-SLAPP statute using a two-step burden-shifting framework. First, "[a] defendant making a special motion to strike has the initial burden to make a prima facie showing that the plaintiff's claim is of the type described in ORS 31.150(2)." *Mohabeer v. Farmers Ins. Exch.*, 318 Or. App. 313, 316, 508 P.3d 37 (2022).[2] Then, "[i]f the defendant meets that burden, 'the burden shifts to the plaintiff in the action to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case.'" *Id.* (quoting Or. Rev. Stat. § 31.150(4)).[3] With respect to the second step, "'[i]f a defendant makes an anti-SLAPP

[2] In other words, that plaintiff's claim arises out of "(a) Any oral statement made, or written statement or other document submitted, in a legislative, executive or judicial proceeding or other proceeding authorized by law; (b) Any oral statement made, or written statement or other document submitted, in connection with an issue under consideration or review by a legislative, executive or judicial body or other proceeding authorized by law; (c) Any oral statement made, or written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest; or (d) Any other conduct in furtherance of the exercise of the constitutional right of assembly, petition or association or the constitutional right of free speech or freedom of the press in connection with a public issue or an issue of public interest." Or. Rev. Stat. § 31.150(2).

[3] ORS § 31.150 was renumbered in 2023; the Court cites to the current numbering.

motion to strike founded on purely legal arguments, then the analysis is made under Fed. R. Civ. P. 8 and 12 standards,'" but "'if it is a factual challenge, then the motion must be treated as though it were a motion for summary judgment and discovery must be permitted.'" *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir. 2018) (quoting *Z.F. v. Ripon Unified School District*, 482 F. App'x 239, 240 (9th Cir. 2012)), *amended*, 897 F.3d 1224 (9th Cir. 2018).

Although Oregon's statute provides that courts "shall enter a judgment of dismissal without prejudice" if a special motion to strike is granted, Or. Rev. Stat. § 31.150(1), the Ninth Circuit has held that refusing to grant leave to amend on this basis alone "would directly collide with [Rule] 15(a)'s policy favoring liberal amendment." *Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004). Therefore, federal courts freely grant leave to amend unless amendment would be futile. *See Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1161 (9th Cir. 2021); *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) ("A district court does not err in denying leave to amend where the amendment would be futile.").

Nonetheless, "[a] defendant who prevails on a special motion to strike . . . shall be awarded reasonable attorney fees and costs." Or. Rev. Stat. § 31.152(3); *see also Northon v. Rule,* 637 F.3d 937, 939 (9th Cir. 2011) (holding that Oregon's anti-SLAPP fee-shifting provisions "protect substantive rights and apply in federal court"). On the other hand, "[i]f the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney fees to a plaintiff who prevails on a special motion to strike." Or. Rev. Stat. § 31.152(3).

**B. Motion to Dismiss**

A defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Such a motion should be granted when the allegations do not "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

When evaluating the sufficiency of a complaint, courts "accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party." *Daniels-Hall v. National Education Association*, 629 F.3d 992, 998 (9th Cir. 2010); *see Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). However, "allegations in a complaint . . . may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Although the court must draw all reasonable inferences from the factual allegations in favor of the plaintiff, *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008), the court need not credit legal conclusions that are couched as factual allegations, *Iqbal*, 556 U.S. at 678.

## BACKGROUND

This case arises out of a dispute among lawyers. Plaintiff is an immigration attorney who started taking over immigration cases from Dan Larsson, who began transitioning to retirement in December 2022 and is not a party to this case. *See* 2d Am. Compl., ECF 6, at ¶ 9. Prior to the transition, Larsson had employed Watkins in an operations role and terminated her employment in September 2021. *Id.* ¶ 21 n.4. Larsson also employed Loverin as an "independent paralegal" until some time in 2023. *Id.* ¶ 40. Among Larsson's cases that plaintiff agreed to work on were those of Lily Tisiot, and pseudonymously identified clients M-S-, O-, and C-H-. *See id.* ¶¶ 9, 22, 23; Compl. Exs., ECF 1-1, at 51. Around October 2023, Watkins and Loverin began referring some of Larsson's clients, including Tisiot, C-H-, M-S-, and O-, to the Stout defendants. *See* Compl. Exs. 33-49, 51, 53-54, 58-60. In October 2023, Larsson emailed Loverin to demand that she stop communicating with his clients and stop sharing information with Kevin Stout. *See id.* 56. Between November 30, 2024, and January 5, 2025, the Stout defendants communicated with members of U.S. Senator Jeff Merkley's staff regarding securing humanitarian parole for Tisiot, who was

in Canada while her husband was being treated for a serious illness in the United States. *See* Compl. Exs. 9-23.

On January 17, 2025, plaintiff filed a complaint against defendants in the Middle District of Florida. *See* Compl., ECF 1. Following briefing on defendants' motion to dismiss for lack of personal jurisdiction, Judge Kathryn Kimball Mizelle found that personal jurisdiction was lacking and ordered that the case be transferred to the District of Oregon. *See* Order of Aug. 4, 2025, ECF 39. Defendants then filed motions to dismiss and strike plaintiff's claims. *See* Stout Defs. Mot. to Strike and Mot. to Dismiss ("Stout Mot."), ECF 52; Watkins Mot. to Dismiss ("Watkins Mot."), ECF 53; Loverin Defs. Mot. to Dismiss ("Loverin Mot."), ECF 54. Plaintiff responded in opposition to each of these motions. *See* Pl. Resp. to Stout Mot., ECF 55; Pl. Resp. to Watkins Mot., ECF 56; Pl. Resp. to Loverin Mot., ECF 57. And defendants filed reply briefs in support of dismissal. *See* Stout Reply, ECF 58; Watkins Reply, ECF 60; Loverin Reply, ECF 61.

## DISCUSSION

Plaintiff brings claims for (1) defamation against the Stout defendants; (2) intentional interference with contracts and business relationships against all defendants; (3) wrongful use of civil proceedings against the Stout defendants; (4) violation of Oregon's Unlawful Trade Practices Act ("UTPA") against the Loverin defendants; and (5) declaratory and injunctive relief against the Stout defendants. The Stout defendants move to strike plaintiff's claims pursuant to ORS § 31.150, and all defendants move to dismiss plaintiff's claims against them pursuant to Rule 12(b)(6). Plaintiff argues that the anti-SLAPP exemption for commercial activity, *see* ORS 35.150(3), applies here and, even if it doesn't, plaintiff's claims aren't based on covered public activity. Plaintiff also argues that the complaint alleges sufficient facts to make out a prima facie case for each cause of action. Accordingly, the Court first considers whether Oregon's anti-SLAPP statute applies to this case. Then, because the second prong of the anti-SLAPP analysis overlaps with the Rule 12(b)(6) standard, the Court evaluates whether each claim states a plausible claim for relief.

**A. Special Motion to Strike**

To evaluate the Stout defendants' special motion to strike, the Court considers two issues: first, whether plaintiff's claims fall within the statutory exemption under ORS § 31.150(3); and second, whether the Stout defendants' have made a threshold showing that plaintiff's claims arise out of covered activity described in ORS § 31.150(2). The Court concludes that the Stout defendants' special motion to strike is not barred by the commercial speech exception and that all of plaintiff's claims challenge conduct covered under ORS 31.150(2).[4]

1. *Commercial Speech Exception*

Oregon's commercial speech exception was enacted in 2023 and "there [has been] little guidance from the Oregon courts on the proper interpretation" of this section. *Pereschica v. Hershner Hunter, LLP*, No. 1:25-cv-00507-AA, 2026 WL 866300, at *4 (D. Or. Mar. 30, 2026). However, interpretations of California's anti-SLAPP law provide helpful guidance because Oregon's law was "modeled on California statutes" and "[i]t was intended that California case law would inform Oregon courts regarding the application of'" Oregon's anti-SLAPP statute. *Page v. Parsons*, 249 Or. App. 445, 461, 277 P.3d 609 (2012).[5]

California courts consistently hold that the commercial speech exemption applies to a lawyer's marketing communications, but not to a lawyer's legal communications. *See Taheri Law Grp. v. Evans*, 160 Cal. App. 4th 482, 490-91 (2008) (concluding that "a cause of action arising from a lawyer's conduct,

---

[4] A third threshold issue, timeliness, is expressly waived by plaintiff. *See* Plf. Resp. to Stout Mot. 2 ("Plaintiff does not object to this Court exercising its discretion to address the anti-SLAPP motion."). Because of the unique procedural posture created by plaintiff filing in a venue where personal jurisdiction was found lacking, and because plaintiff consents, the Court exercises its discretion to consider the Stout defendants' special motion to strike.

[5] The Oregon Supreme Court has clarified that this intent to follow California precedent applies only to cases decided when the anti-SLAPP statute was enacted and "California cases decided after 2001 are considered only for their 'persuasive value.'" *Lowes v. Thompson*, 374 Or. 23, 38, 573 P.3d 377 (2025) (citation omitted). The Oregon Supreme Court has not addressed whether California cases decided before the latter-added commercial speech exception was enacted (i.e., before 2023) are to be treated as presumptively authoritative or merely persuasive. Nonetheless, in light of the similarity of the statutes and the dearth of Oregon decisions addressing this provision, the Court finds the California case law to be strongly indicative of how Oregon courts would rule on this issue.

when the conduct includes advice to a prospective client on pending litigation, does not fall within the statutory exemption to the anti-SLAPP statute" because "construing the commercial speech exemption to encompass a cause of action arising from advice given by a lawyer on a pending legal matter would serve to thwart the client's fundamental right of access to the courts"); *Flores v. Emerich & Fike*, 416 F. Supp. 2d 885, 899 (E.D. Cal. 2006) (holding that the California commercial speech exception does not apply to claims against attorneys whose "alleged actions …do not pertain to efforts to market their services nor were representations made to potential consumers or to gain a competitive advantage"); *see Pereschica*, 2026 WL 866300, at *4 (drawing on California case law and concluding that ORS § 31.152(6) "requires a narrow construction of the commercial speech exception").

Here, plaintiff argues that his defamation claim is exempt from Oregon's anti-SLAPP statute pursuant to ORS 31.150(3) because "[***p]laintiff*** is primarily engaged in the business of selling legal services, and the defamation claim arises out of the [Stout defendants'] communication to U.S. Senator Merkley about ***Plaintiff's*** legal services." Pl. Resp. to Stout Mot. 3. Plaintiff misunderstands the scope of the commercial speech exception. The threshold issue is not whether ***plaintiff*** is engaged in a business of selling services, but whether the claim that the movant seeks to strike "arises out of a communication related to the [movant's] sale or lease of . . . goods or services." Or. Rev. Stat. 31.150(3) (emphasis added). Plaintiff offers no explanation as to how any of his claims arise out of a communication related to the Stout defendants' sale of legal, or any other, services. Plaintiff's defamation claim arises from the Stout defendants' emails to U.S. Senator Jeff Merkley and his staff regarding a humanitarian parole application for their client, Lily Tisiot, and a related ethics complaint. *See* 2d Am. Compl. ¶¶ 11-15. These communications were not related to the advertising or sale of legal services, but to secure relief for a client. Interpreting the commercial speech exception to include a lawyer's advocacy on behalf of a client would swallow the statute and exclude most petitioning activity from the statute's coverage. *See Taheri Law Grp.*, 160 Cal. App. 4th at 491 (holding that an expansive interpretation of the commercial speech exception

"would serve to thwart the client's fundamental right of access to the courts"). Therefore, the Court finds that plaintiff's claims are not exempt under the commercial speech exception.[6]

2. *Covered Activity*

Even if the challenged claims do not arise from commercial activities, the Stout defendants must still establish that the claims relate to specific activity covered by the statute. *See* ORS § 31.150(2); *Mohabeer*, 318 Or. App. at 316 ("A defendant making a special motion to strike has the initial burden to make a prima facie showing that the plaintiff's claim is of the type described in ORS 31.150(2)."). Those statutory categories encompass:

> (a) Any oral statement made, or written statement or other document submitted, in a legislative, executive or judicial proceeding or other proceeding authorized by law;
>
> (b) Any oral statement made, or written statement or other document submitted, in connection with an issue under consideration or review by a legislative, executive or judicial body or other proceeding authorized by law;
>
> (c) Any oral statement made, or written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest; or
>
> (d) Any other conduct in furtherance of the exercise of the constitutional right of assembly, petition or association or the constitutional right of free speech or freedom of the press in connection with a public issue or an issue of public interest.

Or. Rev. Stat. § 31.150(2).

First, as discussed above, plaintiff's defamation claim primarily arises out of the Stout defendants' communications with Senator Merkley's office regarding Lily Tisiot's application for humanitarian parole pending before U.S. Customs and Border Protection ("CBP"). 2d Am. Compl. ¶ 11-14. The Stout defendants argue that these communications were covered activity under subsection (b), among others, because "written statements to a legislative official, who was reviewing an application to the executive

[6] In asserting the commercial speech exception, plaintiff does not make any mention of his claims for intentional interference with business relationships or wrongful use of civil proceedings claims. Nonetheless, the allegations underlying those claims—communications with clients for the purpose of "pursuing frivolous money and ethics claims," 2d Am. Compl. ¶ 21, and "filing multiple civil proceedings" including ethics complaints, money demands and a civil lawsuit, *id.* ¶ 26—are similarly related to the ***practice*** of law on behalf of clients rather than the ***advertising*** of legal services. Therefore, those claims are also outside of the commercial speech exception and subject to a special motion to strike.

branch for humanitarian parole in connection with a quasi-judicial matter, are covered because they are submitted . . . 'in connection with an issue under consideration or review by a legislative, excusive or judicial body or proceeding authorized by law.'" Stout Mot. 15 (quoting Or. Rev. Stat. § 31.150(2)(b)). Plaintiff counters that these communications fall outside the statute's protections because "a single application for humanitarian parole is not an 'immigration proceeding,'" the communication was directed to Senator Merkley's office rather than "the CBP Officer adjudicating the application for humanitarian parole," and "there was no public issue nor public debate involved in Tisiot's application for humanitarian parole." Pl. Resp. to Stout Mot. 5-6.

The Stout defendants' communications with Senator Merkley's office constituted covered activity under ORS § 31.150(2)(b). Although the parties dispute whether CBP's adjudication of a humanitarian parole application qualifies as a judicial or quasi-judicial "proceeding," the statute requires only that the statement concern "an issue under consideration or review" by an "executive or judicial body." Or. Rev. Stat. § 31.150(2)(b). Here, plaintiff's complaint alleges that the Stout defendants sent emails—"written statement[s]"—to Senator Merkley's office regarding Tisiot's humanitarian parole application—"an issue under consideration or review"—which was pending with CBP—an "executive or judicial body." *See id.* Therefore, pursuant to the plain text of the statute, plaintiff's defamation claim arises out of covered activity and may be subject to a special motion to strike.[7]

Second, plaintiff's claims for intentional interference with business relationships and wrongful use of civil proceedings arise out of the Stout defendants' communications with plaintiff's clients "for the improper purpose of pursuing frivolous money and ethics claims," 2d Am. Compl. ¶ 21, and the Stout

---

[7] Plaintiff's complaint hints at another basis for his defamation claim: the Stout defendants' ethics complaint on behalf of Tisiot making the same assertions as those contained in their emails to Senator Merkley's office. 2d Am. Compl. ¶ 15. However, plaintiff expressly disclaims ethics complaints as a basis for his defamation claim. *See* Plf. Resp. to Stout Mot. 8 ("Plaintiff has **not** asserted that the Stout [d]efendants are liable for defamation for the many lies about Plaintiff the Stouts have told the OSB in ethics complaints."). Even if such complaints were a basis for plaintiff's defamation claim, they would be petitioning or free speech activity "in connection with a public issue or an issue of public interest," Or. Rev. Stat. § 31.150(2)(d), because bar complaints work to protect consumers of legal services, *see Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 262 (9th Cir. 2013).

defendants' filing of allegedly improper and harassing "ethics complaints; money demands to the Oregon PLF; money demands to the Oregon CSF; and a civil lawsuit," *id.* at ¶ 26. The Stout defendants contend that such conduct constitutes "oral and written statements made in judicial proceedings," "'in connection with' such proceedings," and "in furtherance of the right to petition on issues of public importance, i.e., ethical violations and negligence committed by attorneys." Stout Mot. 16 (citations omitted). Plaintiff responds generally, asserting that the non-defamation claims involved "no exercises of free speech nor attempted debate of issues of public importance". Pl. Resp. to Stout Mot. 9.

The Stout defendants' communications with actual and potential clients for the purpose of pursing claims constitute covered activity under ORS § 31.150(2)(b). "'[S]tatements made in preparation for litigation or in anticipation of bringing an action . . .' includ[ing] '[c]ounseling others in anticipation of litigation or encouraging others to sue'" are covered for being in connection with a judicial proceeding. *Gunn v. Drage*, 65 F.4th 1109, 1121 (9th Cir. 2023) (quoting *Pech v. Doniger*, 75 Cal. App. 5th 443, 461-62 (2022)); *see also Zweizig v. Nw. Direct Teleservices, Inc.*, No. 3:15-cv-02401-HZ, 2016 WL 5402935, at *4 (D. Or. Sept. 24, 2016) (applying California precedent to conclude that "statement made in anticipation of a proceeding authorized by law" are covered under Oregon's anti-SLAPP law), *aff'd* 818 F. App'x 645, 649 (9th Cir. 2020).

Here, plaintiff specifically alleges that the Stout defendants' alleged acts of tortious interference were for the purpose of pursuing litigation. 2d Am. Compl. ¶ 21. Such communications with clients about forthcoming judicial and quasi-judicial complaints are covered activity. Filing such complaints is just as clearly covered under ORS § 31.150(2)(a). Indeed, filing a civil complaint may be the paradigmatic example of submitting a document in a judicial proceeding. *See Navellier v. Sletten*, 29 Cal. 4th 82, 90 (2002) ("A claim for relief filed in federal district court indisputably is a statement or writing made before a judicial proceeding." (cleaned up)). Because state bar disciplinary proceedings are "quasi-judicial in character," *Ramstead v. Morgan*, 219 Or. 383, 390, 347 P.2d 594 (1959), such filing an ethics complaint is similarly covered by the anti-SLAPP statute.

Further, both the Stout defendants' client communications for the purpose of filing ethics complaints and malpractice lawsuits and the actual filing of such complaints and lawsuits are covered activity under ORS § 31.150(2)(d). Such complaints and suits constitute free speech and petitioning activities concerning a matter of public importance: the competence of licensed attorneys. *Cf. Makaeff*, 715 F.3d at 262 (affirming district court's determination that the defendant's communications to her bank and the Better Business Bureau constituted "conduct in connection with a public issue or an issue of public interest[] because the statements provided consumer protection information" (quotations and citations omitted)); *cf. Neumann v. Liles*, 295 Or. App. 340, 345, 434 P.3d 438 (2018) (holding that an online review of a wedding venue is covered activity under ORS § 31.150(2)(d) because of consumers' interest in such an opinion).

Because the Stout defendants have established that the commercial speech exception does not apply and that plaintiff's claims arise from conduct covered by ORS § 35.150(2), the burden shifts to plaintiff to establish a prima facie case for each claim.

**B. First Claim: Defamation Claim**

Plaintiff asserts a claim for defamation against the Stout Defendants. *See* 2d Am. Compl. ¶¶ 9-19. To defeat an anti-SLAPP motion, a plaintiff must both "establish a prima facie case for defamation" and establish that any asserted privilege is inapplicable. *Preheim v. Clement*, 329 Or. App. 236, 239 (2023) (discussing the conditional privilege for reports made to law enforcement); *see also Cagle v. Sattler ex rel. Toni Jean Reitman Revocable Living Tr.*, 761 F. Supp. 3d 1357, 1364 (D. Or. 2025) ("A plaintiff opposing an anti-SLAPP motion in federal court must overcome substantive defenses that would prevent the plaintiff from properly stating a claim under Rule 12(b)(6). The litigation privilege is one such defense." (quotation marks and citations omitted)).

As discussed above, plaintiff contends that the Stout defendants made false and defamatory statements to Senator Merkley's staff—namely, that plaintiff "did nothing for [Tisiot]," "failed to work on [Tisiot's] immigration case for years," and that Tisiot and her husband "were victims of either fraud or gross incompetence." 2d Am. Compl. ¶¶ 12-15. The Stout defendants do not argue that plaintiff's

allegations fail to satisfy the elements of defamation; instead, they argue that plaintiff's defamation claim fails because the allegedly defamatory statements are absolutely privileged because they were made incident to quasi-judicial proceedings. Stout Mot. 18. Plaintiff responds that an application for humanitarian parole is not a judicial or quasi-judicial matter. Pl. Resp. to Stout Mot. 9.

"Oregon courts have long recognized, and enforced, an absolute privilege for statements in the course of or incident to judicial and quasi-judicial proceedings." *Mantia v. Hanson*, 190 Or.App. 412, 417, 79 P.3d 404 (2003). "The scope of the privilege is a liberal one . . . 'embrac[ing] anything that may possibly be pertinent,'" to the underlying proceeding. *Triem v. State Farm Fire & Cas. Co.*, No. 3:21-cv-00710-AN, 2024 WL 4349113, at *3 (D. Or. Sept. 30, 2024) (quoting *Wollam v. Brandt*, 154 Or. App. 156, 163, 961 P.2d 219 (1998)). Indeed, the privilege permits an attorney "to publish defamatory matter concerning another . . . during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." *Mantia*, 190 Or. App. at 417 (quotation marks and citation omitted). Accordingly, the Stout defendants' statements are privileged, regardless of any defamatory character, if (1) Tisiot's application for humanitarian parole was a judicial or quasi-judicial proceeding, and (2) the statements made to Senator Merkley's staff had some relation to that proceeding.

An application for humanitarian parole is a quasi-judicial matter. Although Oregon rejects a bright-line test for what constitutes a quasi-judicial proceeding, "[g]enerally, a quasi-judicial process (1) necessarily results in a decision, (2) applies preexisting criteria to concrete facts, and (3) 'is directed at a closely circumscribed factual situation or a relatively small number of persons.'" *State ex rel. City of Powers v. Coos Cnty. Airport Dist.*, 201 Or. App. 222, 238, 119 P.3d 225 (2005) (quoting *Strawberry Hill 4 Wheelers v. Board of Comm'rs*, 287 Or. 591, 602-03, 601 P.2d 769 (1979)). Here, an application for humanitarian parole (1) necessarily results in a decision of whether to grant or deny the application, (2) based on the preexisting criteria set forth in 8 U.S.C. § 1182(d)(5) and enabling regulations, and (3) directed at the single person who applied for parole.

This conclusion comports with common understandings of "quasi-judicial" embraced by authorities nationwide. *See, e.g.*, Quasi-Judicial, Black's Law Dictionary (12th ed. 2024) ("Of, relating to,

or involving an executive or administrative official's adjudicative acts."); *see also Singh v. Magee*, 1 F. App'x 713, 715 (9th Cir. 2001) (holding that Immigration & Naturalization Service officers are entitled to quasi-judicial immunity when carrying out lawful orders); *Papagianakis v. The Samos*, 186 F.2d 257, 259 (4th Cir. 1950) (holding that an immigration inspector's detention decision was "of a quasi judicial character")*; United States v. Dohou*, 948 F.3d 621, 624 (3d Cir. 2020) (noting that "decisions by administrative officials in the Executive Branch" may be characterized as "'nonjudicial' or 'quasi-judicial'"). Plaintiff's efforts to distinguish the Stout defendants' cases are not persuasive. Although the cited authorities are not binding on this Court and do not establish the blanket proposition that all acts of all immigration officers are quasi-judicial, these decisions comport with Oregon's established test for assessing whether a decision is quasi-judicial and show that courts routinely find that officials charged with making immigration decisions are acting in a quasi-judicial capacity. *See, e.g.*, *Papagianakis*, 186 F.2d at 259; *Dohou*, 948 F.3d at 624. Plaintiff offers no authority to the contrary. Therefore, because Tisiot's application for humanitarian parole required an executive officer to apply preexisting criteria to reach in a decision applicable to just her, Tisiot's application for humanitarian parole was a quasi-judicial proceeding.

Further, the Stout defendants' communications with Senator Merkley's staff—including all of the allegedly defamatory statements—had a clear and direct relationship to the humanitarian parole proceeding, as the Stout defendants sought and received advocacy from Senator Merkley's staff in that proceeding. *See* Compl. Exs. at 11, 19 (defendant Kevin Stout citing plaintiff's purportedly negligent representation as a reason why Senator Merkley's staff should advocate on Tisiot's behalf in the humanitarian parole proceeding). The scope of the litigation privilege is broad, "'embrac[ing] anything that may possibly be pertinent'" to the underlying proceeding. *Triem*, 2024 WL 4349113, at *3 (quoting *Wollam*, 154 Or. App. at 163). Because Tisiot's application for humanitarian parole was a quasi-judicial proceeding and the Stout defendants' emails were related to that proceeding, the statements in those emails are absolutely privileged. Therefore, plaintiff's defamation claim fails as a matter of law and must be stricken pursuant to ORS § 31.150. Further, because plaintiff's claim is barred by absolute immunity and amendment would be futile, this claim is dismissed without leave to amend.

**C. Second Claim: Intentional Interference with Contracts and Business Relationships**

Plaintiff asserts claims for intentional interference with business relationships against all defendants. *See* 2d Am. Compl. ¶¶ 20-24. "The prima facie elements of a claim for intentional interference are '(1) the existence of a professional or business relationship . . ., (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages.'" *Plotkin v. State Accident Ins. Fund*, 280 Or. App. 812, 822–23, 385 P.3d 1167, 1174 (2016) (omission in original) (quoting *McGanty v. Staudenraus*, 321 Or. 532, 535, 901 P.2d 841 (1995)). With respect to the fourth element, a defendant's means are improper if they "are independently wrongful"—such as "violence, threats, deceit, misrepresentation, bribery, unfounded litigation, defamation, and disparaging falsehood[s]." *Conklin v. Karban Rock, Inc.*, 94 Or. App. 593, 601, 767 P.2d 444 (1989). A defendant's purpose is improper if it is "to inflict injury on the plaintiff as such." *Nw. Natural Gas Co. v. Chase Gardens Inc.*, 328 Or. 487, 498, 982 P.3d 1117 (1999) (internal quotation marks and citations omitted). "The burden of proof rests with a plaintiff to show both that a defendant intentionally interfered with the plaintiff's economic relationship and that the defendant had no privilege to do so." *Id.* at 498-99.

1. *Stout Defendants*

The first element of a intentional interference claim requires plaintiff to allege facts supporting "the existence of any specific [existing or] prospective business relationship with which [the defendant] allegedly interfered." *Sharma v. Providence Health & Servs. Oregon*, 289 Or. App. 644, 670, 412 P.3d 202 (2018). This requires, "at a minimum, the identity of the other party to the alleged prospective relationship with which the plaintiff alleges the defendant interfered." *Id.* Here, plaintiff alleges that the Stout defendants "unethically communicated with [plaintiff's] clients and potential clients . . . for the improper purpose of pursuing frivolous money and ethics claims" against plaintiff. 2d Am. Compl. ¶ 21. However, plaintiff's claim for intentional interference does not identify any specific business relationship with which the Stout defendants interfered. *See id.* ¶¶ 20-24.

In support of plaintiff's argument that the complaint alleges the requisite elements of an intentional interference claim, plaintiff cites a declaration that was submitted in relation to motion practice in the Middle District of Florida. *See* Pl. Resp. to Stout Mot. 18 n.52 (citing Corrected Decl. of Samuel Asbury in Supp. of Resp. to Mot. to Dismiss ("Asbury MTD Decl."), ECF 33-1, at ¶ 14). As an initial matter, with the exception of material "properly submitted as part of the complaint," the Court generally "'may not consider any material beyond the pleadings'" when ruling on a motion to dismiss. *Gumataotao v. Dir. of Dep't of Revenue & Tax'n*, 236 F.3d 1077, 1083 (9th Cir. 2001) (quoting *Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1998)). This rule applies with equal force to anti-SLAPP motions to strike that challenge the legal sufficiency of a complaint. *Herring Networks, Inc.*, 8 F.4th at 1156 (holding that plaintiff's "reliance on evidence outside of its complaint in defending against the [anti-SLAPP] motion was improper and inconsistent with the Federal Rules"). Therefore, the Court cannot properly consider this extra-pleading evidence. Further, even if such an allegation were incorporated into the complaint, plaintiff's declaration expressly states that the complaint filed by the Stout defendants was on behalf of a "couple who were never even [plaintiff's] clients." Asbury MTD Decl. ¶ 14. This directly undermines the contention that the unnamed couple constituted an existing professional or business relationship of plaintiff's.

Searching the complaint and exhibits, the Court identifies only two alleged business relationships with which the Stout defendants may have interfered: Tisiot and C-H-. First, with respect to Tisiot, plaintiff alleges Tisiot hired defendant Stout Law LLC only after plaintiff fired Tisiot as a client. *Id.* ¶¶ 9-10. Plaintiff does not allege any specific conduct by the Stout defendants occurring while he still had a business relationship with Tisiot, and the exhibits incorporated into the complaint show that Tisiot was unhappy with plaintiff and his business partner before she was introduced to the Stout defendants. *See* Compl. Exs. 37-43. Second, in an exhibit not discussed in the complaint, plaintiff documents a call he had C-H-, who inquired about a refund and indicated that they wanted an attorney with whom they could meet face-to-face. *Id.* at 51. This exhibit does not allege that the Stout defendants used improper means or pursued an improper purpose in interfering with plaintiff's relationship with C-H-, nor does it show that plaintiff suffered damages from any such interference with work he had "offered to do . . . free of charge." *Id.*

Plaintiff's complaint fails to identify non-hypothetical business relationships with which the Stout defendants interfered and, therefore, fails to establish the first element of an intentional interference claim. Even upon a searching review of plaintiff's complaint and exhibits, the Court cannot identify a business relationship that plaintiff alleges was wrongfully interfered with. Because plaintiff fails to carry his burden of showing a plausible claim for relief, the intentional interference claim against the Stout defendants must be stricken, but plaintiff is granted leave to amend.

2. *Loverin Defendants*

Plaintiff first alleges that defendant Krystal Loverin interfered with plaintiff's unspecified business relationships by "unlawfully access[ing] and divulg[ing] confidential and proprietary client information . . . about Plaintiff's clients and potential clients to the Stouts and improperly communicated with Plaintiff's clients and potential clients for the improper purpose of convincing those clients to hire the Stouts to pursue frivolous money and ethics claims." 2d Am. Compl. ¶ 21. As discussed above, vague and conclusory allegations of business relationships fail to satisfy the "minimum" required to establish the first element of a claim for intentional interference. *Sharma*, 289 Or. App. at 670.

Plaintiff next alleges that Loverin "spoke[] with M-S- [a client of plaintiff's]," "referred M-S- to the Stouts because they were 'helping people get their money back from Mr. Larsson," and "intentionally tried to sabotage the attorney-client relationship of Plaintiff's and M-S-." 2d Am. Compl. ¶ 22. However, plaintiff's own allegations undercut any claim that his relationship with M-S- was interfered with or that any purported interference caused damage to the relationship. *See id.* ("M-S-'s wife received her permanent resident status in the USA, and M-S- is still working with Plaintiff to bring their son to the USA.").

Finally, plaintiff alleges, with respect to another client, that Loverin "lied to O- by telling O- Plaintiff was charging all Mr. Larsson's clients an additional $1,500 for legal services that had already been paid for." *Id.* ¶ 23. Plaintiff's brief allegations regarding O- are insufficient to infer that plaintiff's relationship was interfered with, that the Loverin defendants used improper means or pursued an improper purpose, or that any such interference damaged plaintiff. *Cf. Noel v. Hall*, No. CIV. 99-649-AC, 2012 WL 3241858, at *15 (D. Or. Apr. 27, 2012) (dismissing intentional interference claim where plaintiff failed to

show "a causal relationship between [defendant's conduct] and harm to [business] relationship; or actual damage that occurred as a result of [such conduct]"), *report and recommendation adopted*, No. 3:99-cv-649-AC, 2012 WL 3241814 (D. Or. Aug. 7, 2012), *aff'd*, 525 F. App'x 633 (9th Cir. 2013).

Taking plaintiff's allegations together, the complaint fails to state a claim for intentional interference against the Loverin defendants. Therefore, plaintiff's claim must be dismissed, but plaintiff is granted leave to amend.

3. *Defendant Watkins*

Plaintiff makes the same general allegation that defendant Watkins "unlawfully accessed and divulged confidential and proprietary client information . . . about Plaintiff's clients and potential clients to the Stouts and improperly communicated with Plaintiff's clients and potential clients for the improper purpose of convincing those clients to hire the Stouts to pursue frivolous money and ethics claims." 2d Am. Compl. ¶ 21. However, the complaint does not identify a single specific business relationship with which Watkins interfered in plaintiff's claim for intentional interference. *Id.* ¶¶ 20-24.

Buried in plaintiff's defamation allegations against the Stout defendants, plaintiff alleges that "Watkins . . . interfered with Plaintiff's relationship with Tisiot by urging Tisiot to hire the Stouts to make claims against Dan Larsson and Plaintiff. Watkins had been fired by Dan Larsson for theft, and that was Watkins' motive for retaliation against Dan Larsson. . . ." *Id.* ¶ 9 (citations omitted). The exhibits referenced in the complaint show Watkins messaging Tisiot on November 21, 2023, "I believe you guys could offer [the Stout defendants] a ton of good information regarding Dan [Lasson] and our office/how things were handled from your perspective and where your case was left" and indicating to Tisiot that Watkins believed the Stout defendants could be of help to her. *See* Compl. Exs. 34-45.

The alleged conduct and incorporated exhibits do not state a claim for intentional interference against Watkins. First, plaintiff independently fired Tisiot as a client the same day Watkins contacted her, 2d Am. Compl. ¶ 9, rendering it implausible that Watkins' communications with Tisiot caused harm to plaintiff's voluntarily terminated business relationship. Second, none of the alleged conduct constitutes improper means. Communicating with Larsson's past clients and encouraging them to contact the Stout

defendants does not constitute the type of "independently wrongful" conduct necessary to establish improper means. *See Conklin*, 94 Or. App. at 601 (identifying "violence, threats, deceit, misrepresentation, bribery, unfounded litigation, defamation, and disparaging falsehood[s]" as examples of independently wrongful conduct). Finally, plaintiff's conclusory allegations of motive are insufficient to show an improper purpose—at the very most, an inference could be drawn from plaintiff's allegations that "Watkins had been fired by Dan Larsson for theft," 2d Am. Compl. ¶ 9, that Watkins had a purpose to injure ***Larsson***, but not any motive to injure plaintiff. Therefore, plaintiff fails to state a claim for intentional interference against Watkins, and the claim will be dismissed, but plaintiff is granted leave to amend.

**D. Third Claim: Wrongful Use of Civil Proceedings or Abuse of Process**

Plaintiff alleges that the Stout defendants have "fil[ed] multiple civil proceedings against Plaintiff for the purpose of harassment and other wrongful ulterior purposes," that defendants Watkins and Loverin have assisted the Stout defendants with these filings, and that such filings "[have] caused Plaintiff lost profits, emotional distress, and loss of business and personal reputation." 2d Am. Compl. ¶ 26.[8] It is unclear whether plaintiff's third claim for relief seeks to assert a claim for (1) wrongful use or initiation of civil proceedings or (2) abuse of process, which are not the same in Oregon. On one hand, plaintiff labels the claim "Wrongful Use of Civil Proceedings." 2d Am. Compl. at 13. On the other hand, plaintiff states the legal standard for abuse of process. *Id.* ¶ 25. Plaintiff's response to the Stout defendants' motion to dismiss continues to muddy the waters by treating the claims as interchangeable. *See* Pl. Resp. to Stout Mot. 21 ("Plaintiff has also presented a short and plain statement and substantial evidence of wrongful use of civil proceedings (i.e., abuse of process). . ."). These are distinct claims under Oregon law. *See Mouktabis v. Clackamas Cnty.*, 327 Or. App. 763, 774, 536 P.3d 1037 (2023) ("Although related to malicious prosecution, abuse of process is a distinct tort."). The Court considers each in turn.

[8] Plaintiff also alleges that the Stout defendants have also threatened at least one other attorney with litigation. *See* 2d Am. Compl. ¶ 27. That appears to have no relevance to this case.

First, "[u]nder Oregon law, the elements of a claim for wrongful initiation of a civil proceeding are (1) commencement and prosecution by the defendant of a judicial proceeding against the plaintiff; (2) the termination of the proceeding in the plaintiff's favor; (3) absence of probable cause to prosecute the action; (4) existence of malice; and (5) damages." *Pereira v. Thompson*, 230 Or. App. 640, 674-75, 217 P.3d 236 (2009). Plaintiff fails to state a claim for wrongful use of civil proceedings because plaintiff does not allege the termination of any proceeding in plaintiff's favor. *See, e.g.*, *id.*; *Alvarez v. Retail Credit Ass'n of Portland, Inc.*, 234 Or. 255, 259, 381 P.2d 499 (1963). Second, plaintiff's suggestion that this is a "question of law which may be addressed at some point," Pl. Resp. to Stout Mot. 21, is not well taken. A motion to dismiss—or a special motion to strike—is precisely the juncture at which the Court must assess whether plaintiff has alleged legally sufficient facts to satisfy all elements of a claim. Finally, plaintiff argues that the "dozen or so ethics complaints filed against Plaintiff by the Stout Defendants . . . have been dismissed and thus they were terminated in Plaintiff's favor." Pl. Resp. to Stout Mot. 22 (citing ECF 38-1, a freestanding exhibit filed in connection with plaintiff's response in opposition to transferring venue). This argument fails for two reasons: First, at this stage, the Court is limited to the contents of the complaint and exhibits on which the complaint necessarily relies, *Gumataotao*, 236 F.3d at 1083, so plaintiff's argument relying on a subsequently filed exhibit cannot support a ruling in his favor. Second, even if the Court considered plaintiff's supplemental documents, Oregon State Bar complaints cannot form the basis of a wrongful use of civil proceedings claim because such complaints are absolutely privileged under Oregon law, *see* Or. Rev. Stat. § 9.537(1) ("Any person who has made a complaint to the bar concerning the conduct of a member, or who has given information or testimony in or relative to a proposed or pending admission, reinstatement or disciplinary proceeding is absolutely immune from civil liability for any such acts."); *Paulson v. Carter*, No. CV-04-1501-HU, 2005 WL 8177149, at *13 (D. Or. Apr. 6, 2005) (holding that bar complaints terminated in plaintiff's favor cannot form the basis of a malicious prosecution claim because ORS § 9.537 provides immunity). There are no allegations that any civil suit has been terminated in plaintiff's favor. Therefore, because plaintiff doesn't allege an essential element of the claim, plaintiff fails to state a claim for wrongful use of civil proceedings.

Abuse of process claims are infrequently litigated in Oregon and there is limited appellate authority. Nonetheless, a claim for abuse of process requires allegations that (1) the defendant had "an ulterior purpose," which "usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money," *Larsen v. Credit Bureau, Inc. of Georgi*a, 279 Or. 405, 408, 568 P.2d 657 (1977); (2) the defendant committed "a willful act in the use of the process not proper in the regular conduct of the proceeding," which requires "some definite act or threat not authorized by the process," *id.*; and (3) the plaintiff "suffered an actual arrest or seizure of property," *Reynolds v. Givens*, 72 Or. App. 248, 256, 695 P.2d 946 (1985).

Here, plaintiff fails to allege facts satisfying either the second or third element. The complaint alleges that "the Stouts have engaged in vexatious litigation against Plaintiff by filing multiple civil proceedings against Plaintiff for the purpose of harassment and other wrongful ulterior purposes" and that plaintiff has been harmed by such litigation. 2d Am. Compl. ¶ 26. However, unlike a wrongful use of civil proceedings claim, which requires no wrongful act other than initiating litigation without probable cause, "there is no liability [on an abuse of process claim] where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Larsen*, 279 Or. at 408. Further, plaintiff does not allege any arrest or seizure of property; allegations of emotional or economic injuries are insufficient. *See Lee v. Mitchell*, 152 Or. App. 159, 179, 953 P.2d 414 (1998) (affirming dismissal of an abuse of process claim due to plaintiff's failure to allege an arrest or seizure of property while holding that plaintiff alleged damages sufficient to sustain a wrongful use of civil proceedings claim).

Because plaintiff's third cause of action fails to state a claim for either wrongful use of civil proceedings or abuse of process, it must be stricken, but plaintiff is granted leave to amend.

**E. Fourth Claim: Unlawful Trade Practices Act Violation**

Plaintiff asserts a claim for a violation of Oregon's Unlawful Trade Practices Act ("UTPA") against the Loverin Defendants. *See* 2d Am. Compl. ¶¶ 29-34. To state a claim under UTPA, a plaintiff must allege that "(1) the defendant committed an unlawful trade practice; (2) plaintiff suffered an ascertainable loss of money or property; and (3) plaintiff's injury (ascertainable loss) was the result of the unlawful trade

practice." *Pearson v. Philip Morris, Inc.*, 358 Or. 88, 127, 361 P.3d 3 (2015); *see also* Or. Rev. Stat. § 646.638(1). One such unlawful trade practice[9] is "[e]ngag[ing] in the business of, or act[ing] in the capacity of, an immigration consultant . . . in this state and for compensation, unless federal law authorizes the person to do so or unless the person is an active member of the Oregon State Bar." Or. Rev. Stat. § 646.608(1)(vvv). A claim under UTPA must be brought "within one year after the discovery of the unlawful method, act or practice." Or. Rev. Stat. § 646.638(6).

Plaintiff's UTPA claim fails for at least two reasons. First, plaintiff argues that the Loverin defendants unlawfully acted as immigration consultants, but the complaint does not allege that Loverin ever "g[ave] advice on an immigration matter," Or. Rev. Stat. § 9.280(2)(a), except under the direction of licensed attorneys, *see* 2d Am. Compl. ¶ 31. Indeed, the complaint repeatedly alleges not that Loverin gave advice to Larsson's former clients, but that she referred them to the Stout defendants, who are licensed attorneys. *See, e.g.*, *id.* ¶¶ 9, 21-22, 32. Nor does the complaint allege that the Loverin defendants provided any such immigration advice for compensation or in Oregon. Because these are essential elements of a UTPA claim, plaintiff fails to state a claim for relief.

Second, plaintiff's claim is time-barred. A UTPA claim must be brought "within one year after the discovery of the unlawful method, act, or practice." Or. Rev. Stat. § 646.638(6). Plaintiff's own complaint and exhibits indicate that he discovered the Loverin defendants' allegedly unlawful immigration consulting no later than November 2023. *See* 2d Am. Compl. ¶ 33; Compl. Exs. 51 (October 26, 2023 email indicating that plaintiff learned from a client that Loverin had contacted them); 58-60 (November 6-8, 2023 email thread with plaintiff and client noting that Loverin had contacted the client); *see also* Pl. Resp. to Loverin Mot. 6-7 (citing the October 2023 and November 2023 emails as evidence that plaintiff "discover[ed] Defendant Loverin had been giving legal advice" to immigration clients). Nonetheless, plaintiff did not bring this claim until January 17, 2025. *See* Compl. ¶¶ 32-37. Because the statute focuses on "discovery"

---

[9] Although the statute identifies more than 75 unlawful practices, Or. Rev. Stat. § 647.637-638, the complaint identifies only this unlawful practice provision, 2d Am. Compl. ¶ 30, and plaintiff expressly disclaims other bases for UTPA liability, *see* Resp. to Loverin Mot. 5-6.

of the unlawful practice, Or. Rev. Stat. § 646.638(6), allegations that a previously discovered unlawful practice is continuing, *see, e.g.*, 2d Am. Compl. ¶ 8, are insufficient to establish timeliness. *See Colquitt v. Manufacturers & Traders Tr. Co.*, 144 F. Supp. 3d 1219, 1228 (D. Or. 2015) (finding that continuing-violation doctrine does not apply to UTPA claims).

To establish timeliness, plaintiff cites an exhibit incorporated into this claim. *See* Pl. Resp. to Loverin Mot. 10 n.32 (citing Compl. Exs. 53-54). This document shows a client, M-S-, emailing plaintiff to ask for a refund and noting that Loverin "suggested that I should see a attorney that is helping people to get their money back from Mr. larsson . . . she also give me some information about others attorney here in bend." Compl. Exs. 53 (errors in original). The client concluded, "I don't want you or larsson to withdraw from the case . . . . Thank you for all your help." *Id.* First, allowing each allegedly unlawful act in a pattern to reset the limitations period "would run contrary the statute's explicit emphasis on 'discovery' of the unlawful conduct, as opposed to an ongoing financial harm." *Easterbrook v. LinkedIn Corp.*, No. 6:22-cv-01108-MC, 2023 WL 3022497, at *3 (D. Or. Apr. 20, 2023); *see also MacQuaid v. New York Times Co.*, No. 3:22-cv-00955-MO, 2023 WL 2633359, at *2 (D. Or. Mar. 24, 2023) (holding allegedly unlawful charge did not reset time when plaintiff knew or should've known of the allegedly unlawful practice a year prior). Second, even if the Court were to treat Loverin's communications with M-S- as an independent act, M-S- expressly decides to maintain plaintiff's representation, so the complaint's general allegations of lost profits or ascertainable loss are implausible with respect to this particular act.

Therefore, plaintiff's UTPA claim must be dismissed. Further, because the claim is time-barred, amendment would be futile and the claim is dismissed without leave to amend.

**F. Fifth Claim: Declaratory Judgment**

Plaintiff asserts a claim for declaratory judgment against the Stout defendants. *See* 2d Am. Compl. ¶¶ 35-36. However, each of plaintiff's substantive claims against the Stout defendants has been stricken or dismissed and "the court cannot grant declaratory relief in the absence of a substantive cause of action." *Bisson v. Bank of Am., N.A.*, 919 F. Supp. 2d 1130, 1139 (W.D. Wash. 2013); *see also Sidorov v. Transamerica Life Ins. Co.*, 832 F. App'x 479, 483 (9th Cir. 2020) (affirming dismissal of a declaratory

judgment claim where the substantive claim on which declaratory relief was premised had been dismissed). Therefore, plaintiff's fifth claim for relief must be stricken, but plaintiff is granted leave to amend.

### G. Sixth Claim: Permanent Injunction

Plaintiff asserts a claim for permanent injunctive relief against all defendants. *See* 2d Am. Compl. ¶¶ 37-43. Similar to declaratory relief, injunctive relief is a remedy, not an independent, standalone cause of action. *Brown v. Transworld Sys., Inc*., 73 F.4th 1030, 1038 (9th Cir. 2023) ("[D]eclaratory and injunctive relief . . . also fails because these remedies are not stand-alone claims, and they do not survive the dismissal of" the substantive claims). Therefore, plaintiff's sixth claim is stricken, but plaintiff is granted leave to amend.

## CONCLUSION

For the reasons stated herein, the Stout defendants' motion to strike or, in the alternative, motion to dismiss, ECF 52, is GRANTED as to the motion to strike. Further, defendant Watkins's motion to dismiss, ECF 53, is GRANTED. The Loverin defendants' motion to dismiss, ECF 54, is also GRANTED. Plaintiff's first claim (defamation) and fourth claim (UTPA) are stricken and dismissed, respectively, without leave to amend. Plaintiff's remaining claims are stricken and dismissed with leave to amend. If the plaintiff believes he can cure the deficiencies identified in this Opinion and Order, an amended complaint may be filed within thirty (30) days. Failure to do so will result in dismissal of the complaint.

IT IS SO ORDERED.

DATED this 17th day of September, 2026.

Adrienne E Nelson

Adrienne Nelson
United States District Judge